No. 25-2206

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**LUCAS CONNOR**

Plaintiff-Appellant,

v.

**BERNARD GOLDSMITH,**

Defendant-Appellee

On Appeal from the United States District Court
For the District of Massachusetts

**BRIEF OF APPELLANT, LUCAS CONNOR**

Lucas Connor, Pro Se

297 Turnpike Rd. Apt 108

Westborough, MA 01581

(857) 206-0160

LQCONNOR@ALASKA.EDU

Dated: January 28, 2026

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES…………………………………………………..iii

I. JURISDICTIONAL STATEMENT…………………………………….………1

II. STATEMENT OF THE ISSUE…………………………………………..2

    A. Plaintiff's Filings Constitute A Reply........................................................2

    B. Calculating Damages...................................................................................2

III. STATEMENT OF THE CASE…………………………………………..3

    A. Statement of the Facts……………………………………………..3

    B. Procedural History……………………………………...............………5

IV. SUMMARY OF THE ARGUMENT………………………...…………7

V. THE ARGUMENT………………………………………………………8

    A. Standard of Review…………………………………………………..8

    B. Details Of Response To Defendant's Motion To Dismiss.......................9

    C. Calculation Of Damages and Jurisdiction.............................................12

VI. Conclusion...................................................................................................14

i

CERTIFICATE OF SERVICE.................................................................15

CERTIFICATE OF COMPLIANCE.....................................................16

ADDENDUM......................................................................................17

# TABLE OF AUTHORITIES

<u>Page</u>

## CASES

Erickson v. Pardus, 551 U.S. 89, 94 (2007)...........................................................8

Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014).........................8

## STATUTES AND RULES

28 U.S.C. § 1332 ...................................................................................................1

28 U.S.C. § 1291....................................................................................................1

## ARTICLES

Hon. Robert Bacharach and Lyn Entzeroth, *Judicial Advocacy In Pro Se*

*Litigation: A Return To Neutrality,* Vol. 42 Indiana Law Review (2009)...............8

I. <u>JURISDICTIONAL STATEMENT</u>

The jurisdiction of the District Court in Massachusetts was established by total diversity under rule 28 U.S.C. § 1332 because Plaintiff and Defendant live in different states (Massachusetts and California respectively), and because the amount in contention is greater than $75,000.  On December 10, 2025, the district court entered judgment in favor of the defendant by granting the motion to dismiss on the grounds that Plaintiff had not replied to it.  (Ruling on Mo., ECF No. 54) and (Dis. of Case, ECF No. 55).  On December 10, 2025, the same day, the plaintiff filed a timely notice of appeal.  (Notice of Ap., ECF No. 56). This court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final order of the district court.

II. <u>STATEMENT OF THE ISSUES</u>

A.     Whether the court abused its discretion by ruling that the documents filed in response to the motion to dismiss did not constitute a reply.

B.     Whether the court erred in ruling that the defendant's motion negated the judge's initial decision that the damages request was appropriate and sufficient to establish jurisdiction.

III. <u>STATEMENT OF THE CASE</u>

A. STATEMENT OF THE FACTS

Plaintiff and Defendant were involved in a long-distance relationship between March 2021 and February 2023.  After a dispute in February 2023, which is detailed at length in Plaintiff's affidavit (Connor Aff., ECF No. 46), Defendant began a prolonged and still-escalating campaign of defamation and incitement against the plaintiff.  For over a year, the plaintiff sought only a public correction and cessation of incitement.  Defamatory statements made by the Defendant to his large social media following included false statements that the Plaintiff had swatted him, that Plaintiff had hunted down his mother and stolen money from her, whereas in fact they had never interacted at all, and similar whole-cloth fictional allegations of serious criminal activity.[1]  (ECF No. 9, Attach. #10).

---

[1] After October 7th, 2023, Defendant had also begun a campaign of defaming Israel and the Jewish Diaspora to promote antisemitism.  He was making up his own lies, it was not normal protest.  The Defendant is Jewish and I'm not, but I have Jewish family including little cousins trying to go to school in this atmosphere.  By the time he issued the correction shown in ECF No. 9 Attachment 10, I was asking him to stop defaming them as well as myself.  He refused and escalated on all fronts.  I could not in good conscience take that correction for myself while he was engaged in the same kind of hate speech against an entire people, and he knew that at the time.

3

In September and October of 2024, the Defendant escalated in two specific ways. He repeatedly claimed that Plaintiff had sent him menstrual blood and dead animals in the mail and he posted a map to the Plaintiff's apartment urging his large social media following to cause problems for Plaintiff at home.

These claims were made in reference to a package that was sent from Plaintiff to Defendant in November of 2022. It contained commercially packaged Hot Hands Brand hand warmers which do not resemble blood. Defendant further stated that the box had not been opened, but that he had "received a note" from Plaintiff claiming it contained blood that he was meant to "consume as a tea". He has been repeating the lie and posting Plaintiff's address since then.

After it happened the first time, efforts were made by the Plaintiff to rectify the situation by getting the Defendant's family to intervene. This includes the Defendant's mother, Janet Goldsmith, and his sister, California Assistant AG Allison Goldsmith. They did not intervene and the Defendant continued to escalate, posting a map to Plaintiff's apartment and instructions to make false calls to law enforcement. At that point the case was filed.

Since the case has been filed, the Defendant has escalated his behavior and involved other serious criminals. (Exhibit Aubrey Cottle, ECF No. 12).

4

B. PROCEDURAL HISTORY

On October 17 2024, Plaintiff filed the case in the Federal District of Massachusetts. (ECF No. 1). This complaint did not lead to a summons against the Defendant, but the judge requested an amended complaint. (ECF No. 8). The amended complaint was delivered June 13, 2025. (ECF No. 9). A summons was issued based on the amended complaint on September 8, 2025. (ECF No. 14). Plaintiff filed several requests for preservation or production of evidence that were intended to remove the box from the defendant and have it examined by police, which were denied as the defendant hadn't been served yet.

Defendant filed his motion to dismiss on Nov 8, 2025. In response to this motion, Plaintiff filed a series of exhibits showing that the majority of the claims of fact made in the motion to dismiss were false. Plaintiff also filed requests for evidence, including again requesting a subpoena for the box to have it examined. These requests were not granted or denied. On Dec 10, 2025, the district court granted the motion to dismiss on the grounds that Plaintiff had not filed a reply to Defendant's motion. (ECF No. 54, pg. 3). Plaintiff was driving to the airport to visit a dying parent, but stopped on the way and saw that the case had been dismissed, so canceled the flight, drove an hour back to the Worcester area, and

filed a timely notice of appeal on the same day, Dec 10, 2025. (ECF No. 56).

## VI. SUMMARY OF THE ARGUMENT

The first part of the argument will be that Plaintiff did reply to the motion to dismiss. Pro Se litigants are given some benefit of the doubt because they lack formal legal training. The Defendant, Bernard Goldsmith, is a trained attorney who for a short time worked at Sullivan & Cromwell. The Plaintiff has no legal education, and is currently finishing a 4-year degree that was started in 2002.

Nonetheless, the documents filed by the plaintiff in response to the defendant's motion directly addressed claims made in the motion, addressed the calculation of emotional damages to support accuracy of jurisdiction, addressed the defendant's mental health which is implicitly raised in the motion to dismiss as a potential defense, and requested key evidence which is also necessary to remove from the defendant for safety reasons. Plaintiff did not file a document called a "reply to the motion" due to not knowing about that format, but the filings do constitute the substance of a reply to the motion to dismiss.

The second part of the argument will be about calculating damages in this case, both by the Plaintiff in order to establish jurisdiction and by the court. The argument will be that the request was appropriate, and may be low, even if the court finds it appropriate to award less.

7

V. THE ARGUMENT

A. Standard of Review

The standard of review is abuse of discretion, because the judge improperly applied the law and did not take certain context into account, such as plaintiff's pro se status and the parties' relative levels of legal education, when deciding that the responses to the motion to dismiss didn't constitute a reply. [Erickson v. Pardus, 551 U.S. 89, 94 (2007)]. [Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014)]. [Bacharach and Entzeroth, *Judicial Advocacy In Pro Se Litigation: A Return To Neutrality,* (2009) pg. 26].

The judge also erred legally in dismissing the case for jurisdictional reasons based on the request for damages, which could have been handled in a range of ways but which had already been approved in that capacity by serving the summons on the amended complaint.

The primary issue is that the responses to the motion do constitute a reply, because the responses also support and explain the damages request and so support jurisdiction, but were not taken into account.

B. Details Of Response To Defendant's Motion To Dismiss

Documents ECF No. 24-27, No. 29, and No. 32-53 were filed by the
Plaintiff in response to the Defendant's motion to dismiss. Some of these filings
are exhibits addressing the motion and were filed as such, but some are exhibits
addressing the Defendant's ongoing real time behavior or requests for evidence.

ECF No. 24 is an exhibit showing that he was posting his own motion on
social media to his ~100,000 followers in order to incite against me. This was
included to demonstrate his attitude about his own statements about me, his
outsized aggression toward me, and his lack of remorse, as well as the fact that he
was exhorting threats and activity from third parties.

ECF No. 25 are exhibits filed as replies to ECF No. 22, the motion to
dismiss. These directly show that specific statements in ECF No. 22 are false,
including that I had imagined or pretended at a romantic involvement. That in
itself is a wildly defamatory claim. It also shows that he really said what he said
about Police Chief Pytel.

ECF No. 26 was filed to demonstrate that his followers do feel entitled to
mess with me because he has told them to. This may seem like a mild example,
but it can't be stressed enough that I'm a total stranger to these people.

9

The groups he's engaging include Anonymous, run by a man named Aubrey Cottle and depicted in a film called The Antisocial Network, they take pride in "suicide trolling" people. The Defendant is a business partner of Cottle's on a crypto project that started in September of 2025. This is because the Defendant himself claims to have co-founded 4chan when he was a law student, and Cottle affirms this. The people he's inciting and giving my address to aren't ordinary people, and he has also monetized incitement against me through Elon's payment system and by using it to market their coin.

ECF No. 27 describes the police being falsely called to my apartment on a mental health check on Nov 18. This is why ECF No. 29 is a motion to produce the Defendant's phone records, and those would have also provided evidence contradicting claims made in his motion to dismiss. ECF No. 44 and 45 are notifications that I was still waiting for the police report. ECF No. 45 also tries again to request getting the box in question removed from Defendant and examined.

These 20 or so filings, several of which are filed as replies to the document ECF 22, describe a pattern by the defendant of reckless and malicious dishonesty and incitement that has persisted for years. His attacks on Plaintiff's character

constitute per se defamation, in that saying someone has mailed you blood or imagined a relationship is a lie that necessarily damages someone. I have heard that in Massachusetts, per se defamation isn't necessarily a statutory category, but I bring it up because you're familiar with the legal concept and it demonstrates the seriousness of the lies he's telling.

Some of the filings are about my health or circumstances. I have severe gastroparesis and other problems, my life is very painful and it prevents me from doing a lot. He knows this while he behaves this way. It hasn't stopped him or deescalated his drive to cause harm at all. These are to illustrate why the emotional damages demand is so high and to support the request.

Some of the filings may have seemed irrelevant to the district court, such as ECF No. 47, which contains texts from the Defendant that were intended for someone named Peter, but were sent to me by mistake. They show him engaging in gift card laundering for an unknown group of people. Filings showing deliberate scams by the Defendant are there to demonstrate that the Defendant's claims are not produced by psychosis. They're part of a body of evidence showing that he's not behaving this way because he believes what he's saying. He knows that the claims he has been making are false.

C. Calculation Of Damages and Jurisdiction

Defendant depicts several informal calculations of damages over time by the Plaintiff. (ECF No. 22, 31). The Plaintiff has no experience calculating damages, but we can see from the emails shared by the Defendant that the Plaintiff was saying two things when requesting numbers in the ballpark of "$5000". This was late in the conflict, when legal action was going to have to go forward in some form, but Plaintiff kept stating "This isn't about the money" and asking for goods of certain prices with low resale value. Whether a case like this normally accrues punitive damages in this jurisdiction is a different question, but those requests were clearly intended to be punitive damages. The idea is that his behavior has been so extreme and deliberately injurious that it should cost him something in order to prevent recurrence.

The figure from the original filing is $76,000. There are a range of ways to calculate emotional damages. Income isn't a factor here because as I said, I'm on social security. $1000 is an estimate related to a storage unit that contained clothing, personal documents, and books meant for resale. If $5,000 is intended to be punitive, that leaves us with $70,000 in emotional damages to account for. Between February 20, 2023 and October 17, 2024, there are 605 days.

12

Per diem, that adds up to about $115 of pain and suffering per day. For brevity, I've limited the exhibits a little bit, but even in his motion to dismiss you can see his comportment and the effort he puts into causing me to suffer. He is making up wild and damaging things and involving anyone he can. I have not lied about him once, and the frantic emails to his family are reflective of what he has put me through and continues to put me through.

As of now, if the number stays the same, that brings it to about $65 of pain and suffering per diem. If the per diem request stays the same, that brings the emotional damages calculation to about $124,030, plus 6k is about $130,000. With emotional damages, there are judgment calls to make by both the plaintiff and by the court; there are different ways to calculate it, but by no standard is this an outlandish figure under the circumstances.

The amended complaint based its jurisdiction on this $76,000 figure. The judge in the district court served the summons on this basis. That's the first judgment call that the court has around emotional damages. The second is in awarding them. The court is permitted to award a lower amount if it sees fit without negating the jurisdiction decision. Jurisdiction is appropriate here.

## IV. CONCLUSION

These facts show that the Plaintiff did reply substantially to the motion to dismiss and that the motion to dismiss should be reevaluated in the context of the reply. It has also been demonstrated that the damages request is within reason and appropriate under the circumstances, providing for jurisdiction in this court.

Signed,

Lucas Connor

Lucas Connor, Pro Se

297 Turnpike Rd. Apt 108

Westborough, MA 01581

857-206-0160

LQConnor@Alaska.edu

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

*Check the appropriate box in section 1, and check the box in section 2.*

1.    **Type-Volume**

☑    This document complies with the word limit of FRAP            32
because, excluding the parts of the document exempted by FRAP 32(f) and
_____, this document contains

_____2,484_____ words.

or

☐    This brief complies with the line limit of FRAP                      because,
excluding the parts of the brief exempted by FRAP 32(f) and
_____, this brief uses a monospaced
typeface and  contains                         lines of text.

2.    **Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the
type-style requirements of FRAP 32(a)(6).

(s) _Lucas Connor_____

Attorney for _Lucas Connor, Plaintiff_____

Dated: _1/28/2026_____

Rev.: 12/16

# MASSACHUSETTS APPEALS COURT

**John Adams Courthouse**
**One Pemberton Square, Suite 1200**
**Boston, MA 02108**
**(617) 725-8106**
http://www.mass.gov/courts/appealscourt/

Docket Number        25-2206

Lucas Connor
_____
Appellant(s)

v.

Bernard Goldsmith
_____
Appellee(s)

## CERTIFICATE OF SERVICE

Pursuant to Mass.R.A.P. 13(d), I hereby certify, under the penalties of perjury, that on this date of        1/28/2026
I have made service of a copy of the following document(s):

Appellate Brief

upon the attorney of record for each party, or if the party has no attorney then I made service directly to the self-represented party, by

(•) hand delivery    ( ) first class mail

to the following person(s) and address(es). *Attach a separate page if more space is necessary.*

```
Bernard Goldsmith
1113 Kent Dr.
Davis, CA 95616

Service ordered and expedited.
```

_Lucas Connor_ (signature)
_____
Signature

297 Turnpike Rd. Apt 108
Westborough, MA 01581

_____
Address

Lucas Connor, Pro Se
_____
Printed Name and BBO# (if applicable)

857-206-0160
_____
Telephone

## **<u>ADDENDUM</u>**

This brief is on appeal from ruling ECF No. 54 and 55.  Document 54 starts at Pg 2 and No. 55 starts at pg. 8.  This addendum is itself a total of 15 pages including the attachments.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **LUCAS CONNOR,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 4:24-cv-40127-MRG** |
| | ) | |
| **BERNARD GOLDSMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER DISMISSING CASE FOR LACK OF JURISDICTION**

**GUZMAN, J.**

In this action, Plaintiff Lucas Connor ("Connor" or "Plaintiff")[1] alleges that after the termination of their online relationship, Defendant Bernard Goldsmith ("Goldsmith" or "Defendant") began an extensive social media campaign to slander Connor. Connor brings claims of intentional infliction of emotional distress and defamation.

Before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rules 12(b)(1)-(2), (3), and (6). [ECF No. 22]. Defendant argues that the Plaintiff does not meet the statutory requirement for amount in controversy to remain in federal court, the Massachusetts Court does not have personal jurisdiction over the Defendant, the venue is improper, and Plaintiff fails to state a claim for relief.

For the reasons stated below, the Motion to Dismiss is **GRANTED.**

---

[1] In Plaintiff's pleadings Connor identifies with "They/Them" pronouns, the Court will use those pronouns accordingly.

1

## I.    BACKGROUND

Except as otherwise noted, the following facts are set forth as alleged in the Amended Complaint. [ECF No. 9].

Plaintiff Connor is a resident of Massachusetts. [Id. at 3]. Defendant Goldsmith is a resident of California. [Id.] Connor states that the parties met online in 2021 and developed an intimate virtual relationship. [ECF No. 9-1 ¶ 2]. In their complaint, Connor outlines the parties' individual physical and mental health concerns, which were regular points of discussion and concern in their relationship. [Id. ¶¶ 2-5, 7, 11]. The relationship began to devolve when Goldsmith created a Discord server for the purposes of "cult recruitment and reification." [Id. ¶ 8]. When Connor disagreed with Goldsmith's online behavior, Goldsmith then referred to Connor as a "stalker" and began "incit[ing] physical threats against plaintiff." [Id. ¶ 10]. Connor asserts that during this period, Connor was also suffering health complications and argues that they missed payments for their storage unit and eventually lost the unit and its contents. [Id. ¶ 11]. As outlined in the Amended Complaint and the subsequent supplemental filings, there is substantial evidence of online interactions between the parties and frequent police involvement in their relationship. [Id. ¶ 12; ECF Nos., 27, 29, 44-46].

Connor alleges that there is a continuous social media campaign of "slander and incitement of threats" against them, where Goldsmith posted a picture of a package with Goldsmith's address alleging Connor had sent menstrual blood to Goldsmith's home, and later instructed his social media followers to "SWAT" Connor's home. [ECF No. 9 at 4].

In terms of relief, Connor seeks a "public apology pinned on all [social media] platforms for two weeks, $76,000, and a cease in communication between Defendant and Plaintiff. [Id.]

### A. **Procedural History**

Plaintiff filed their complaint on October 17, 2024. [ECF No. 1]. The initial complaint was not served to the Defendant. Plaintiff filed an Amended Complaint on June 13, 2025. [ECF No. 9]. After delays in service to Defendant, Defendant Goldsmith filed his Motion to Dismiss on November 17, 2025. [ECF No. 22]. The parties have since filed dozens of supplemental exhibits and briefings outlining their relationship on social media platforms, by text, and police altercations. [See ECF Nos. 24-53]. Plaintiff has not submitted a formal opposition to the Motion to Dismiss to address Defendant's arguments.

### II.    **LEGAL STANDARDS**

When, as here, a plaintiff is proceeding *pro se*, the Court must construe their complaint liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014). "Our judicial system zealously guards the attempts of *pro se* litigants on their own behalf." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). "However, *pro se* status does not insulate a party from complying with procedural and substantive law." Id. at 890 (emphasis added). Like other plaintiffs, "even a *pro se* plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Adams v. Stephenson, 116 F.3d 464, *1 (1st Cir. 1997) (unpublished table decision) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

### A. **Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction, and as such, the Court has "a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). The Court "must resolve questions pertaining to its subject-matter jurisdiction before it

may address the merits of a case." Donahue v. Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citation omitted). When an action is brought in federal court pursuant to diversity jurisdiction, jurisdiction is proper only where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. The burden is on the plaintiff to "establish that the minimum amount in controversy has been met." CE Design, Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (quoting Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012)). A plaintiff's "good faith allegation of damages meeting the required amount in controversy is usually enough." Id. However, the First Circuit has held "'legal certainty that the claim is really for less than the jurisdictional amount,' [] trumps the plaintiff's good faith in claiming for a larger amount." See Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 4 (1st Cir. 2011) (citations omitted) (discussing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)). In other words, "jurisdiction is defeated notwithstanding the plaintiff's good faith in claiming for the jurisdictional amount if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount." Id. "Where it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount,' dismissal is required." Id. (quoting St. Paul Mercury Indem. Co., 303 U.S. at 289).

## III.   DISCUSSION

### A. Subject matter jurisdiction

Plaintiff Connor is a resident of Massachusetts, and Defendant Goldsmith is a resident of California. [ECF No. 9 at 3]. Therefore, there is complete diversity among the parties in this case. See Alvarez-Torres v. Ryder Mem'l Hosp., Inc., 582 F.3d 47, 53-54 (1st Cir. 2009) ("[D]iversity jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant."). In the Defendant's Motion to Dismiss, he argues that the Plaintiff cannot feasibly meet the amount

4

in controversy requirement of exceeding $75,000 pursuant to 28 U.S.C. § 1332, and therefore the federal court does not have jurisdiction to hear the matter. [ECF No. 22 at 9-10]. The Court agrees.

It is the Plaintiff's burden to prove in their filings that the amount in controversy may reasonably exceed $75,000, exclusive of interest and costs. CE Design, Ltd., 755 F.3d at 43. This burden is heightened when a Defendant challenges the Court's subject matter jurisdiction based on the amount in controversy; in such case, the plaintiff must allege, with "sufficient particularity," facts that support their claim for the jurisdictional amount. Andersen v. Vagaro, Inc., 57 F.4th 11, 15 (1st Cir. 2023) (quoting Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). Although Connor had an opportunity and notice to respond to Defendant's Motion to Dismiss, he did not file an opposition. Connor asserts $76,000 in damages, but the Amended Complaint and Plaintiff's numerous supplemental filings are devoid of any specific allegations regarding their damages which would support an amount in controversy in excess of $75,000. Connor's bare allegation that their claim meets the amount in controversy requirement for diversity subject matter jurisdiction is insufficient. The Court cannot reasonably infer that the state claims of intentional emotional distress and defamation would exceed $75,000. Accordingly, the Court finds that "it is apparent, to a legal certainty," that the plaintiff is not "entitled to recover a sum equal to, or in excess of, the jurisdictional minimum." Esquilin-Mendoza, 638 F.3d at 4 (citations omitted).

Connor's allegations fail to establish this Court's subject matter jurisdiction. As detailed above, the Amended Complaint fails to satisfy the amount in controversy requirement to establish federal diversity jurisdiction under 28 U.S.C. §1332. Further, there is no federal question plausibly pleaded on the face of the Amended Complaint that would support federal question jurisdiction under 28 U.S.C. § 1331. Even with the more liberal construction accorded a *pro se* litigant's

pleading, the Complaint fails to provide a basis for this Court's jurisdiction. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. New Eng. Sch. Of Law, 389 F.3d 5, 13 (1st Cir. 2004). Accordingly, dismissal is warranted. See Esquilin-Mendoza, 638 F.3d at 4 (citations omitted).

### A. Personal jurisdiction, Venue, Failure to State a Claim

Since this Court has determined that it does not have subject matter jurisdiction over the case, it will not render any judgments on the merits of the claims. See e.g., Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 100 (1st Cir. 2001) ("When a federal court concludes that it lacks subject matter jurisdiction over a case, it is precluded from rendering any judgments on the merits of the case.").

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's case is **DISMISSED without prejudice** for lack of jurisdiction.

## V.    SUMMARY FOR PRO SE PLAINTIFF

Federal courts are courts of limited jurisdiction and there are two primary ways that a Court can have original jurisdiction over the claims in a case. This means that an individual seeking relief from a federal court must assert claims under federal law or there must be "diversity jurisdiction." To achieve diversity jurisdiction, a plaintiff must properly assert in their complaint that they reside in a different state from all defendants in a lawsuit **and** that the total damages in the case are over $75,000, exclusive of costs and interests. The claims you have brought in this case, intentional infliction of emotional distress and defamation, are state law claims. Although you plead in the Amended Complaint that you reside in a different state than the defendant, you do not outline with enough particularity how you meet the threshold of exceeding $75,000 in damages. Therefore,

your complaint is not properly before this federal court. You may pursue these claims in a state court.

For the reasons stated above, the Motion to Dismiss, ECF No. 22, is **GRANTED.**

**SO ORDERED.**

Dated: December 10, 2025

  /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **LUCAS CONNOR,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 4:24-cv-40127-MRG** |
| | ) | |
| **BERNARD GOLDSMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER DISMISSING CASE FOR LACK OF JURISDICTION**

**GUZMAN, J.**

In this action, Plaintiff Lucas Connor ("Connor" or "Plaintiff")[1] alleges that after the termination of their online relationship, Defendant Bernard Goldsmith ("Goldsmith" or "Defendant") began an extensive social media campaign to slander Connor. Connor brings claims of intentional infliction of emotional distress and defamation.

Before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rules 12(b)(1)-(2), (3), and (6). [ECF No. 22]. Defendant argues that the Plaintiff does not meet the statutory requirement for amount in controversy to remain in federal court, the Massachusetts Court does not have personal jurisdiction over the Defendant, the venue is improper, and Plaintiff fails to state a claim for relief.

For the reasons stated below, the Motion to Dismiss is **GRANTED.**

---

[1] In Plaintiff's pleadings Connor identifies with "They/Them" pronouns, the Court will use those pronouns accordingly.

1

## I.    BACKGROUND

Except as otherwise noted, the following facts are set forth as alleged in the Amended Complaint. [ECF No. 9].

Plaintiff Connor is a resident of Massachusetts. [Id. at 3]. Defendant Goldsmith is a resident of California. [Id.] Connor states that the parties met online in 2021 and developed an intimate virtual relationship. [ECF No. 9-1 ¶ 2]. In their complaint, Connor outlines the parties' individual physical and mental health concerns, which were regular points of discussion and concern in their relationship. [Id. ¶¶ 2-5, 7, 11]. The relationship began to devolve when Goldsmith created a Discord server for the purposes of "cult recruitment and reification." [Id. ¶ 8]. When Connor disagreed with Goldsmith's online behavior, Goldsmith then referred to Connor as a "stalker" and began "incit[ing] physical threats against plaintiff." [Id. ¶ 10]. Connor asserts that during this period, Connor was also suffering health complications and argues that they missed payments for their storage unit and eventually lost the unit and its contents. [Id. ¶ 11]. As outlined in the Amended Complaint and the subsequent supplemental filings, there is substantial evidence of online interactions between the parties and frequent police involvement in their relationship. [Id. ¶ 12; ECF Nos., 27, 29, 44-46].

Connor alleges that there is a continuous social media campaign of "slander and incitement of threats" against them, where Goldsmith posted a picture of a package with Goldsmith's address alleging Connor had sent menstrual blood to Goldsmith's home, and later instructed his social media followers to "SWAT" Connor's home. [ECF No. 9 at 4].

In terms of relief, Connor seeks a "public apology pinned on all [social media] platforms for two weeks, $76,000, and a cease in communication between Defendant and Plaintiff. [Id.]

2

### A. **Procedural History**

Plaintiff filed their complaint on October 17, 2024. [ECF No. 1]. The initial complaint was not served to the Defendant. Plaintiff filed an Amended Complaint on June 13, 2025. [ECF No. 9]. After delays in service to Defendant, Defendant Goldsmith filed his Motion to Dismiss on November 17, 2025. [ECF No. 22]. The parties have since filed dozens of supplemental exhibits and briefings outlining their relationship on social media platforms, by text, and police altercations. [See ECF Nos. 24-53]. Plaintiff has not submitted a formal opposition to the Motion to Dismiss to address Defendant's arguments.

### II.    **LEGAL STANDARDS**

When, as here, a plaintiff is proceeding *pro se*, the Court must construe their complaint liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014). "Our judicial system zealously guards the attempts of *pro se* litigants on their own behalf." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). "However, *pro se* status does not insulate a party from complying with procedural and substantive law." Id. at 890 (emphasis added). Like other plaintiffs, "even a *pro se* plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Adams v. Stephenson, 116 F.3d 464, *1 (1st Cir. 1997) (unpublished table decision) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

### A. **Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction, and as such, the Court has "a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). The Court "must resolve questions pertaining to its subject-matter jurisdiction before it

3

may address the merits of a case." <u>Donahue v. Boston</u>, 304 F.3d 110, 117 (1st Cir. 2002) (citation

omitted). When an action is brought in federal court pursuant to diversity jurisdiction, jurisdiction

is proper only where "the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs." 28 U.S.C. § 1332.  The burden is on the plaintiff to "establish that the minimum

amount in controversy has been met." <u>CE Design, Ltd. v. Am. Econ. Ins. Co.</u>, 755 F.3d 39, 43 (1st

Cir. 2014) (quoting <u>Abdel-Aleem v. OPK Biotech LLC</u>, 665 F.3d 38, 41 (1st Cir. 2012)).  A

plaintiff's "good faith allegation of damages meeting the required amount in controversy is usually

enough." <u>Id.</u>  However, the First Circuit has held "'legal certainty that the claim is really for less

than the jurisdictional amount,' [] trumps the plaintiff's good faith in claiming for a larger amount."

<u>See</u> <u>Esquilín-Mendoza v. Don King Prods., Inc.</u>, 638 F.3d 1, 4 (1st Cir. 2011) (citations omitted)

(discussing <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288-89 (1938)).  In other

words, "jurisdiction is defeated notwithstanding the plaintiff's good faith in claiming for the

jurisdictional amount if one familiar with the applicable law could not reasonably have concluded

that the claim was worth the jurisdictional amount." <u>Id.</u>  "Where it appears 'to a legal certainty that

the claim is really for less than the jurisdictional amount,' dismissal is required." <u>Id.</u>  (quoting <u>St.

Paul Mercury Indem. Co.</u>, 303 U.S. at 289).

### III.  <u>DISCUSSION</u>

#### A.  **Subject matter jurisdiction**

Plaintiff Connor is a resident of Massachusetts, and Defendant Goldsmith is a resident of

California. [ECF No. 9 at 3]. Therefore, there is complete diversity among the parties in this case.

<u>See</u> <u>Alvarez-Torres v. Ryder Mem'l Hosp., Inc.</u>, 582 F.3d 47, 53-54 (1st Cir. 2009) ("[D]iversity

jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant.").  In

the Defendant's Motion to Dismiss, he argues that the Plaintiff cannot feasibly meet the amount

in controversy requirement of exceeding $75,000 pursuant to 28 U.S.C. § 1332, and therefore the federal court does not have jurisdiction to hear the matter. [ECF No. 22 at 9-10]. The Court agrees.

It is the Plaintiff's burden to prove in their filings that the amount in controversy may reasonably exceed $75,000, exclusive of interest and costs. CE Design, Ltd., 755 F.3d at 43. This burden is heightened when a Defendant challenges the Court's subject matter jurisdiction based on the amount in controversy; in such case, the plaintiff must allege, with "sufficient particularity," facts that support their claim for the jurisdictional amount. Andersen v. Vagaro, Inc., 57 F.4th 11, 15 (1st Cir. 2023) (quoting Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). Although Connor had an opportunity and notice to respond to Defendant's Motion to Dismiss, he did not file an opposition. Connor asserts $76,000 in damages, but the Amended Complaint and Plaintiff's numerous supplemental filings are devoid of any specific allegations regarding their damages which would support an amount in controversy in excess of $75,000. Connor's bare allegation that their claim meets the amount in controversy requirement for diversity subject matter jurisdiction is insufficient. The Court cannot reasonably infer that the state claims of intentional emotional distress and defamation would exceed $75,000. Accordingly, the Court finds that "it is apparent, to a legal certainty," that the plaintiff is not "entitled to recover a sum equal to, or in excess of, the jurisdictional minimum." Esquilin-Mendoza, 638 F.3d at 4 (citations omitted).

Connor's allegations fail to establish this Court's subject matter jurisdiction. As detailed above, the Amended Complaint fails to satisfy the amount in controversy requirement to establish federal diversity jurisdiction under 28 U.S.C. §1332. Further, there is no federal question plausibly pleaded on the face of the Amended Complaint that would support federal question jurisdiction under 28 U.S.C. § 1331. Even with the more liberal construction accorded a *pro se* litigant's

pleading, the Complaint fails to provide a basis for this Court's jurisdiction. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. New Eng. Sch. Of Law, 389 F.3d 5, 13 (1st Cir. 2004). Accordingly, dismissal is warranted. See Esquilin-Mendoza, 638 F.3d at 4 (citations omitted).

### A.  Personal jurisdiction, Venue, Failure to State a Claim

Since this Court has determined that it does not have subject matter jurisdiction over the case, it will not render any judgments on the merits of the claims. See e.g., Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 100 (1st Cir. 2001) ("When a federal court concludes that it lacks subject matter jurisdiction over a case, it is precluded from rendering any judgments on the merits of the case.").

### IV.  CONCLUSION

For the reasons stated above, Plaintiff's case is **DISMISSED without prejudice** for lack of jurisdiction.

### V.  SUMMARY FOR PRO SE PLAINTIFF

Federal courts are courts of limited jurisdiction and there are two primary ways that a Court can have original jurisdiction over the claims in a case. This means that an individual seeking relief from a federal court must assert claims under federal law or there must be "diversity jurisdiction." To achieve diversity jurisdiction, a plaintiff must properly assert in their complaint that they reside in a different state from all defendants in a lawsuit **and** that the total damages in the case are over $75,000, exclusive of costs and interests. The claims you have brought in this case, intentional infliction of emotional distress and defamation, are state law claims. Although you plead in the Amended Complaint that you reside in a different state than the defendant, you do not outline with enough particularity how you meet the threshold of exceeding $75,000 in damages. Therefore,

your complaint is not properly before this federal court. You may pursue these claims in a state court.

For the reasons stated above, the Motion to Dismiss, ECF No. 22, is **<u>GRANTED.</u>**

**SO ORDERED.**

Dated: December 10, 2025

                      /s/ Margaret R. Guzman
                      Margaret R. Guzman
                      United States District Judge